UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

SHAUN VANALSTINE,

Plaintiff,

v.

TOWNSHIP OF EAGLE,

Defendant.
_______________________________/

Case No. 1:26-cv-02381

Hon. Jane M. Beckering
U.S. District Judge

**REPORT AND RECOMMENDATION**

*Pro se* Plaintiff Shaun VanAlstine initially filed a Motion for Preliminary Injunction and Temporary Restraining Order (TRO). The Court previously denied Plaintiff's motion for a TRO and allowed him to re-file his request for a preliminary injunction after Defendant was served with a complaint. This Report and Recommendation (R. & R.) addresses Plaintiff's Emergency motion for a TRO and for a preliminary injunction. ECF No. 7.

Plaintiff's complaint alleges that Defendant denied his request for a variance to construct an accessory structure for agriculture storage. ECF No. 1, PageID.7. He alleges that Defendant failed to provide him with a pre-hearing notice of "the ZBA variance meeting concerning his property." *Id.* That Defendant failed to record "an official audio, video, or court-reporter transcript" of the administrative enforcement hearing that resulted in an order for structural removal. *Id.* The Defendant failed to inform Defendant of the next steps after the hearing. *Id.* Plaintiff alleges that he was discriminated against in violation of his right to equal protection, and that his

procedural and substantive due process rights were violated. *Id*. PageID.8-10. He further alleges that Defendant arbitrarily, capriciously and unconstitutionally carried out a regulatory taking of his property. *Id*.. PageID.9, 11.

This matter proceeded at the state level to the Michigan Court of Appeals. In an April 30, 2026 decision, the Michigan Court of Appeals summarized the facts as follows:

> VanAlstine is the record owner of the subject property, which is approximately 2.43 acres and located in an agricultural zoning district. Although the property does not conform to the 10-acre minimum lot size for the agriculture district, it is considered to be a legal nonconformity because the parcel existed before the township's adoption of the IZO, which became effective on January 1, 2024. Previously, Clinton County promulgated all zoning regulations for the township. All exterior construction work within the township requires a zoning permit approved by the township's zoning administrator. The zoning permit must be obtained before applying for a building permit from the county.
>
> Early in 2024, VanAlstine planned to build an addition to the existing pole barn on the property. He intended to use the addition to store and maintain work vehicles and equipment. In

March 2024, VanAlstine's wife, Brittney, contacted Joel Haviland, Clinton County's building official, and informally inquired about the required setbacks for an addition to an existing pole barn. She did not provide any information about the property address, the lot size, the size of the current pole barn, or the size of the proposed addition. Haviland responded:

> The minimum front yard setback is 83", measuring from the center of the road. However, there are many other requirements for barns that you will need to consider. Please see the link below to Clinton County Zoning requirements for Accessory Buildings (barn) section 4.1.

Brittney clarified, "The add on of the polebarn [sic] will be toward the road and not toward any other structure. So essentially, it needs to be 83" from the center of the roadway and all of the matching structure colors and roofing material[?]" Haviland responded, "Yes, that is correct. Let me know if you need anything else."

On June 9, 2024, Brittney e-mailed Haviland to inquire about obtaining a permit to build the addition. The following day, Haviland e-mailed Brittney the applications and instructed her to provide the construction plans and site plan with the completed applications for consideration. A few hours later, Brittney inquired whether the permits should be requested through the township or the county.

VanAlstine began constructing the addition before applying for a zoning permit from the township or a building permit from the county. On July 1, 2024, after construction of the addition was mostly complete, VanAlstine applied to the township for a zoning permit. VanAlstine reported that the proposed addition would be 18 feet tall, 40 feet wide, and 60 feet long.

On July 10, 2024, the zoning administrator denied the application.[1] The zoning administrator stated that the existing pole barn was "considered as a legal non-conforming structure due to the placement of the structure within the required front yard." The zoning administrator explained that the minimum front yard setback was 50 feet, but the proposed addition would only be approximately 24 feet from the right-of-way. The zoning administrator also stated that the maximum floor area of an accessory structure for the property was approximately 2,654 square feet,[2] but the existing pole barn was approximately 2,160 square feet of floor area and the proposed addition would be an additional 2,400 square feet of floor area. The application was denied because the addition would violate the minimum front yard setback, exceed the maximum floor area for accessory buildings on the property, and would unlawfully expand the legally nonconforming structure toward the front lot line.

Following the zoning permit denial, VanAlstine applied for three variances: (1) a variance to reduce the required front yard setback from 50 feet to 24 feet; (2) a variance to increase the allowable square footage of accessory buildings on the site to 4,560 square feet; and (3) a variance to expand a legal nonconforming structure. VanAlstine maintained that the county zoning commissioner had stated that the proposed addition followed all guidelines for Clinton County, the neighbors all agreed to the addition, and the addition would not interfere with any roadway travel or safety. On August 8, 2024, the township issued a stop work order to halt construction of the structure. On August 26, 2024, the township Zoning Board of Appeals (the ZBA) held a public hearing on the variance application. The ZBA adopted the findings of the zoning administrator, and denied the variance requests. VanAlstine did not appeal the ZBA's decision.

On September 11, 2024, Ken Skunda, the township's code enforcement officer, sent a letter to VanAlstine stating that the pole barn addition violates the IZO and demanded that it be removed from the property by October 11, 2024. Skunda stated that the township would take legal action to abate the nuisance and enforce the IZO if the structure was not removed by the deadline. VanAlstine did not remove the structure.

In December 2024, the township commenced this action alleging that the pole barn addition violated the IZO and thus was a nuisance per se. The township further alleged that VanAlstine continued building the structure in violation of the stop work order. The township sought a declaration that the structure was a nuisance per se and requested an injunction to enjoin construction. On January 7, 2025, the parties stipulated to a preliminary injunction enjoining VanAlstine from continuing construction.

In his answer to the township's complaint, VanAlstine admitted that he constructed the structure without a zoning or building permit but maintained that he acted in a good faith manner. He also admitted to the size and location of the structure. VanAlstine maintained that construction was completed before the stop work order was issued. He contended that any additional steps taken after the stop work order were simply "to protect the already-built structure," and denied that any further construction was done. VanAlstine asserted a series of affirmative defenses, including equitable estoppel, regulatory taking, and arguments contesting the equity of the township's request that the structure be removed.

The township moved for summary disposition under MCR 2.116(C)(10) arguing that there were no genuine issues of material fact whether the structure violates the IZO and thus is a nuisance per se. The township requested an injunction to abate the zoning violations by removing the structure. In response, VanAlstine maintained that he relied in good faith on his wife's communications with Haviland about the setback requirements, which were incorrect. VanAlstine argued that he had a right to conduct discovery to develop his affirmative defenses. For example, he contended that the township's denial of his zoning permit and his variance application resulted in a regulatory taking. He asserted that he should be afforded "the chance to prove his affirmative defense by presenting evidence of the impact of the Township's actions on his investment-backed expectations, the economic impact of the Township's action, and the character of the Township's actions." The township replied that discovery would be futile because VanAlstine admitted that he built the structure without a zoning or building permit, did not dispute the size and location of the structure, and acknowledged that the structure remained on the property. The township argued that VanAlstine was liable for a nuisance per se regardless of his alleged defenses.

> Following a hearing, the trial court granted the township's motion, ordered VanAlstine to remove the structure, authorized the township to enter the property to abate the violations if VanAlstine failed to do so, and awarded the township its costs and attorney fees. This appeal followed.

ECF No. 12-1, PageID.114-117.

The Michigan Court of Appeals affirmed the decision of the trial court, ruling that Eagle County properly found that the unpermitted structure on the property violated the townships zoning ordinances and must be removed because it is a nuisance. *Id.*, PageID.117-123. The Michigan Court Appeals further held that Plaintiff waived his due process arguments by not first raising them in the trial court. *Id.*, PageID.123.

Plaintiff moves for a TRO and preliminary injunction to prevent Eagle Township from an "imminent, unlawful threat to demolish and abate Plaintiff's $1,100,000.00 agricultural storage facility . . . and disrupt Plaintiff's commercial machining trade valued at approximately $5,000.00 per day." ECF No. 7, PageID.56.

TROs and Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm

to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.*

These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

Initially, Plaintiff must show a strong or substantial likelihood of success on the merits of his complaint. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. First, Plaintiff has made no showing that he has a substantial likelihood of success on his claim against Defendant. This matter was litigated in the state courts at least to the Michigan Court of Appeals. The Michigan Court of Appeals agreed with Defendant and concluded that Plaintiff's unpermitted building violated the township zoning ordinance and that Defendant's decision to remove the property was correct. Plaintiff has not set forth sufficient facts showing that he has a strong or substantial likelihood of success on the merits of his case.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *Overstreet*, 305 F.3d at 578. There exists nothing in the record that shows that the township would be unable to pay monetary

damages to Plaintiff in the event that this Court ultimately determined that Plaintiff's rights were violated during the zoning board proceedings.

Because plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, the undersigned respectfully recommends that Plaintiff's motion for injunctive relief be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Maarten Vermaat
Maarten Vermaat
U.S. MAGISTRATE JUDGE

Dated: October 1, 2026